<head>

<title>USCA1 Opinion</title>

<style type="text/css" media="screen, projection, print">

<!--

@import url(/css/dflt_styles.css);

-->

</style>

</head>

<body>

                UNITED STATES COURT OF APPEALS
                     FOR THE FIRST CIRCUIT

                         ____________

No. 91-1508

                        UNITED STATES,
                           Appellee,

                              v.

            SAVER HODGE-BALWING a/k/a BALWIN HODGE,
                     Defendant, Appellant.

                         ____________

                         ERRATA SHEET

    The opinion of this court issued on December 30, 1991, is
amended as follows:
    Page 2, paragraph 2, line 4 - delete the word "that" after
"(3)."
    Page 6, lines 3 and 2 from the bottom - insert a parenthesis
before the word "quoting," delete the underlining of "quoting" and
insert a parenthesis after the parenthesis following "1966."
    Page 9, lines 8 and 7 from the bottom - delete the comma after
the parenthesis following "1991," insert a parenthesis prior to the
word "quoting," delete the underlining of "quoting," and on line 7
from the bottom, insert a parenthesis after the figure "100."
    Page 10, lines 4 and 5 - delete the comma after "1985," insert
a parenthesis before the word "quoting," delete the underlining of
the word "quoting" and insert a parenthesis after the parenthesis
that follows "1982."
                        ____________________

No. 91-1508

                           UNITED STATES,

                              Appellee,

                                 v.

               SAVER HODGE-BALWING a/k/a BALWIN HODGE,

                        Defendant, Appellant.

                        ____________________

            APPEAL FROM THE UNITED STATES DISTRICT COURT

                   FOR THE DISTRICT OF PUERTO RICO

           [Hon. Hector M. Laffitte, U.S. District Judge]

                        ____________________

                               Before

                       Campbell, Circuit Judge,
                    Bownes, Senior Circuit Judge,
                    and Torruella, Circuit Judge.

                        ____________________

    Ardin Teron for appellant.
    Jose A. Quiles-Espinira, Assistant United States Attorney, with whom
Daniel F. Lopez-Romo, United States Attorney, and Ernesto Hernandez-
Milan, Assistant United States Attorney, were on brief for appellee.

                        ____________________

                        ____________________

    BOWNES, Senior Circuit Judge.  This appeal arises from the
arrest of the defendant/appellant, Baldwin Farver Hodge, at the
Luis Muoz Marn Airport in Puerto Rico.  A jury trial
convicted Hodge for possession with intent to distribute
cocaine, in violation of 21 U.S.C.  841(a), importation of
cocaine, in violation of 21 U.S.C.  952(a), and failure to
register the cocaine on the cargo manifest or supply list of
the aircraft, in violation of 21 U.S.C.  955.  
    On appeal, Hodge raises five issues that are actually
three.  He, in essence, alleges that (1) the prosecutor
violated discovery rules; (2) the prosecutor's closing argument
resulted in prejudice to the defendant; and (3) the above
improprieties resulted in the violation of his due process
rights to a fair trial.  We affirm his convictions.
                        BACKGROUND
    Hodge was en route from Trinidad to New York when his
plane, American Airlines Flight 755, made a scheduled stop in
San Juan, Puerto Rico on December 3, 1990.  After disembarking
from the aircraft, instead of walking toward the secondary
inspection area, Hodge went in the other direction.  His
behavior drew the attention of a United States Customs
official, Enrique Carbonell, who stopped and questioned him.
Carbonell conducted a search of Hodge's suitcase and found six
boxes of Breeze brand detergent.  He asked Hodge why he was
carrying so many detergent boxes and Hodge answered that he was
allergic to other detergents.  Upon inspection of one of the
boxes, Carbonell found a plastic bag with white powder in it.
A sample of the white powder was field tested which indicated
that it was cocaine.  
    Approximately 1,994 grams (gross weight) of cocaine were
found in the boxes.  A forensic chemist of the U.S. Customs
Service analyzed the substance on December 7, 1990 and found a
purity of 90% cocaine hydrochloride.  Hodge was indicted on
December 3, 1990.
                    DISCOVERY VIOLATIONS
    Hodge contends that the district court committed
reversible error by allowing the prosecutor to question
Carbonell about Hodge's allergy statement.  He argues that the
prosecutor violated rule 16 of the Federal Rules of Criminal
Procedure in failing to disclose that Carbonell would testify
as to what Hodge told him when asked why he had so many boxes
of detergent.  He further argues that the prosecutor's failure
to disclose the evidence violated his due process rights under
Brady v. Maryland, 373 U.S. 83 (1963).  The parties had open
file pre-trial discovery.  During the prosecutor's opening
statement, he stated that Carbonell's testimony would include
his questioning of Hodge regarding the detergent boxes.   The
prosecutor said, "When questioned as to why he was carrying six
boxes of detergent, the defendant answered that he was allergic
to other types of detergent and that he bought all those six
boxes in order to wash his clothes."  The defense objected to
this comment on the grounds that the prosecutor was commenting
on the silence of the defendant and that the prosecutor had not
provided the defense with "any statement from the defendant and
that's a substantial error."  The prosecutor countered that the
statement at issue was not discoverable but, in any event, it
was in a case report.  After defense counsel stated that it had
not been given the case report, the court ordered the
prosecutor to provide defense counsel with a copy of it.
Defendant did not move for a continuance.  Later that same day,
Carbonell testified, under both direct and cross-examination,
of questioning Hodge on the detergent boxes and Hodge's
response.      
    We review discovery violations under an abuse of
discretion standard and not the harmless error standard, as
suggested by both parties.  See United States v. Tejada, 886
F.2d 483, 486 (1st Cir. 1989); United States v. Samalot Perez,
767 F.2d 1, 4 (1st Cir. 1985).  We fail to see how the trial
court abused its discretion in admitting Carbonell's testimony
into evidence; it ordered the prosecution to hand over the case
report to defendant.  Hodge has failed to bear his burden of
demonstrating how he was prejudiced by the late delivery of the
case report containing Hodge's statement.  Indeed, Hodge failed
to ask for a continuance once specific information about
Carbonell's testimony was revealed during the prosecutor's
opening statement.  
    We find that Hodge's due process argument is without
merit.  The Supreme Court in Brady v. Maryland, 373 U.S. at 87,
held that suppression by the prosecution of evidence favorable
to the accused who has requested it violates due process where
the evidence is material either to guilt or to punishment.  See
also United States v. Peters, 732 F.2d 1004, 1008 (1st Cir.
1984) (finding that prosecutorial delay in handing over
discoverable material does not violate Brady requirements).
Hodge fails to explain how the evidence in question constitutes
exculpatory evidence.
    Hodge raises a second discovery error.  He contends that
the testimony of Dr. Prieto, the contract doctor for the United
States Marshal Service, should have been excluded.  Dr. Prieto
testified that he conducted a physical examination of Hodge and
that, "According to my records as the information given by the
patient, there is no known drug allergies."  Defendant objected
on the grounds that the testimony was irrelevant and also
violative of the physician/patient privilege.  The court
overruled both objections.  Hodge does not raise these
objections on appeal.
    On appeal, Hodge argues for the first time that the court
erred in permitting the government to introduce Dr. Prieto's
testimony because it violated Fed. R. Crim. P. 16(a)(1)(D).
In general, error may not be predicated upon the court's
rulings admitting or excluding evidence unless the defendant
preserves his rights.  See United States v. Griffin, 818 F.2d
97, 99 (1st Cir.), cert. denied, 484 U.S. 844 (1987).  We can
only conduct a plain error review.  Id. at 100.  
    The court admitted Dr. Prieto's testimony on the ground
that it was relevant to confirm that Hodge was lying when he
told Carbonell that he was allergic to detergents other than
Breeze.  On this record, we cannot say that this is one of
those "exceptional cases or under peculiar circumstances to
prevent a clear miscarriage of justice."  Id.(quoting Nimrod v.
Sylvester, 369 F.2d 870, 873 (1st Cir. 1966).) We conclude that
plain error is plainly absent.
    Similarly, as explained above, Hodge's contention that Dr.
Prieto's testimony violated Brady v. Maryland requirements is
without merit.  Hodge contends that his statement to Dr. Prieto
was a "compelled statement obtained by official government
medical authorities."  Because Hodge failed to raise this claim
at trial, we would review the claim under the plain error
standard.  We find, however, that there is no record support
for the contention that any information Hodge provided to Dr.
Prieto was compelled.  In any event, there was no plain error.
              PROSECUTION'S CLOSING ARGUMENT
    Hodge raises several claims on appeal as to prosecutorial
misconduct in the closing argument.  He has preserved for
appeal, however, only the objection to the prosecutor's
reference to Hodge's silence.  The defense objected to the
following part of the prosecutor's closing argument:
         But let's get to the -- to the case.  Why was
    the defendant so nervous when Carbonell saw him for
    the first time?  You remember that Carbonell told
    you that he was trying to -- he was going to the
    opposite direction where he was supposed to go.  Why
    was he so nervous?  Why was he going to the opposite
    direction?  You can infer from that, and that's not
    doing the Government's job; that's not doing the
    prosecutor's job.  That's part of the deliberation
    process, and the Court will instruct you as to that.
    

         You can infer from that -- from that evidence
    that he was nervous because he knew he was carrying
    cocaine and he saw the Custom inspector waiting for
    him there and he knew that in order to enter the
    United States he has to go through Customs and that
    he was in jeopardy of being arrested, as he was for
    our luck.  And that the moment that the agent
    detected those six boxes, the agent told him, why
    are you carrying so many detergent boxes?  And he
    answered, because I am allergic to other detergents.

         He was arrested on December the 3rd, and he was
    taken care of by Dr. Prieto who you heard today, and
    Dr. Prieto told you that in his medical history at
    the penitentiary there is nothing about any type of
    allergies in relation to the defendant, and the
    Breeze detergent has been under the custody of the
    agent since December the 3rd.

         But what is important about that comment, I am
    allergic, that's why I have six boxes of detergent?
    He never told the agent at that moment, that's not
    mine; that was put there.  He said, I am allergic.
    He wasn't surprised with the detergents in his
    suitcase.  He knew they were there.  That's why the
    evidence shows that he's guilty; that he's guilty as
    charged.
    We have fashioned a three prong test in examining whether
the prosecution's misconduct "so poisoned the well" that the
trial's outcome was likely affected.  See United States v.
Capone, 683 F.2d 582, 586-87 (1st Cir. 1982).  We examine (1)
whether the prosecutor's conduct was isolated and/or
deliberate; (2) whether the trial court gave a strong and
explicit cautionary instruction; and (3) whether it is likely
that any prejudice surviving the judge's instruction could have
affected the outcome of the case.  Id.  See also Mateos-
Sanchez, 864 F.2d 232, 241 (1st Cir. 1988).  
    The record shows that the court gave curative instructions
to the jury:
    THE COURT:  Very well.  Ladies and gentlemen of the
    jury, I'm going to give you what we call a curative
    instruction.  At some point in time the Assistant
    U.S. Attorney, when he was referring to that area
    about the defendant being interviewed about the
    boxes of detergent and that the -- Mr. Hernandez
    says why didn't he say that that's not mine, et
    cetera, I want to tell you very emphatically that
    the law does not compel a defendant to testify on
    his behalf and that no comment on the defendant's
    silence may be made and no inference then -- I'm
    charging you that no inference from that may be
    made.
We find that the court properly accounted for possible
prejudice and no reversible error was committed.
    As for the other claims of prosecutorial misconduct that
Hodge raises on appeal, defense counsel failed to object to
them during trial.  Hodge now claims that the prosecutor in his
closing argument made improper references to willful blindness
of the part of Hodge; vouched for its witness, customs
inspector Carbonell; and injected his personal feelings as to
Hodge's confinement.  As explained before, our only review is
for plain error.  "Under this standard, we review only
'blockbusters:  those errors so shocking that they seriously
affect the fundamental fairness and basic integrity of the
proceedings conducted below.'"  United States v. Olivo-Infante,
938 F.2d 1406, 1412 (1st Cir. 1991) (quoting United States v.
Griffin, 818 F.2d at 100.)  Accordingly, we evaluate Hodge's
procedurally defaulted claims against the entire record in
order to determine whether the plain error standard has been
met.  
    The prosecutor strayed beyond the permissible evidentiary
borders in his remarks on closing.  But we are unable to
conclude, based on the record, that these prosecutorial
improprieties are "'particularly egregious errors' . . . that
'seriously affect that fairness, integrity or public reputation
of judicial proceedings.'"  United States v. Young, 470 U.S. 1,
15 (1985), (quoting United States v. Frady, 456 U.S. 152, 163
(1982).)  We find that while Hodge may not have had a perfect
trial, it was a fair trial.  There was no denial of due
process.
    Affirmed.

</body>

</html>