March 2, 1993

UNITED STATES COURT OF APPEALS
FOR THE FIRST CIRCUIT

No. 92-1597

ABRUZZI FOODS, INC.,

Plaintiff, Appellant,

v.

PASTA & CHEESE, INC., and
CARNATION COMPANY,

Defendants, Appellees.

APPEAL FROM THE UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF MASSACHUSETTS

[Hon. Edward F. Harrington, U.S. District Judge]

Before

Breyer, Chief Judge,

Bownes, Senior Circuit Judge,

and Boudin, Circuit Judge.

Elliot M. Loew with whom Loew & Tamkin was on brief for

appellant.
Sydelle Pittas with whom Powers & Hall, P.C. was on brief for

appellees.

March 2, 1993

BREYER, Chief Judge. Abruzzi Foods, Inc. brought

this diversity action against a competitor, Pasta & Cheese,

Inc. (and its parent). Abruzzi claims that Pasta & Cheese

has violated chapter 93A of the Massachusetts code by

"deceptive[ly]" calling its pasta "fresh." Mass. Gen. L.

ch. 93A, 2(a) (forbidding "unfair or deceptive acts or

practices in the conduct of any trade or commerce"), 11

(permitting civil suits by competitors). The district court

granted the defendants' motion for summary judgment.

Abruzzi appeals. We affirm the judgment.

The determinative legal question is whether or not

Abruzzi, responding to the defense motion for summary

judgment, "set forth specific facts," Fed. R. Civ. P. 56(e),

which, in this context, would permit a factfinder to

conclude that the defendants' use of the word "fresh," on

its pasta labels and in its pasta advertising, had the

"capacity or tendency or effect of deceiving buyers or

prospective buyers in any material respect," Mass. Regs.

Code tit. 940, 3.05(1). We have read the record and

conclude that it did not.

Pasta & Cheese sets forth by affidavit, Fed. R.

Civ. P. 56(c), important facts about the product, namely

that it is "not dehydrated, frozen or canned," that it is to

be "refrigerated . . . at the store," that it retains "its

fresh appearance, texture, fragrance, and taste," that a

buyer is to cook it "in boiling water for very brief periods

of time," and that it has a somewhat limited shelf life.

Pasta & Cheese also concedes, for argument's sake, that it

"pasteurizes" the product to "retard[] spoilage" and

"preserve . . . freshness . . . for a commercially

reasonable shelf-life period." Abruzzi does not dispute any

of these facts. Rather, it seeks to show that calling a

"pasteurized" pasta product "fresh" is deceptive.

The fatal problem for Abruzzi consists of its lack

of evidence that this is so. Abruzzi cannot appeal to the

"common sense" of the matter, for "common sense" does not

support its claim. Rather, common sense suggests that the

answer to the question, "Does calling this product 'fresh'

mislead?" is, "It depends." One might, for example,

accurately call pasteurized milk "fresh," in order to

distinguish it from condensed or powdered or long-life milk.

See FDA, Final Rule, Food Labeling, 58 Fed. Reg. 2302, 2403

(Jan. 6, 1993) (to be codified at 21 C.F.R. 101.95) (since

"consumers recognize that milk is nearly always

pasteurized," there is no danger of deception in calling

pasteurized milk "fresh"). But, to call pasteurized orange

-3-
3

juice "fresh" is a different matter. See id. at 2403; Coca-

Cola Co. v. Tropicana Products, Inc., 690 F.2d 312, 318 (2d

Cir. 1982) (finding plausible the claim that the advertising

of pasteurized juice as "as it comes from the orange" was

facially false). Of course, pasta is not milk; nor is it

like orange juice, for (despite the occasional hint to the

contrary) pasta does not grow on trees. All pasta is

"artificial" in the sense that it is manufactured; indeed,

sophisticated machinery is necessary to produce pasta in

"commercial" quantities for supermarkets. In this context,

the word "fresh" might well (as Pasta & Cheese argues)

distinguish pasta that is soft and cooks quickly and needs

refrigeration from pasta that is dried and needs longer

cooking time, and lasts almost forever at room temperature.

Nor can Abruzzi succeed by pointing to some

special legal rule, or legal precedent, that says

"pasteurized pasta" is not "fresh" pasta. The federal Food

and Drug Administration has recently published rules on the

use of the word "fresh." See 58 Fed. Reg. at 2401-07, 2426.

(Indeed, we have waited to see what they would say.) Those

regulations make clear that whether or not the use of such a

word is, or is not, deceptive varies, depending upon product

and context. The FDA decided not to promulgate a rule or

-4-
4

regulation governing the use of the term "fresh" as applied

to refrigerated pasta in "extended shelf life" packaging,

such as the products before us. See id. at 2406, 335

("because of the diversity of products in the extended shelf

life category [expressly including "pasta products"],

[freshness standards] for such products [are] not being

addressed in this rule"). Thus, Abruzzi cannot appeal to

the FDA rules for support.

All this means that Abruzzi must rely upon record

evidence. And, Abruzzi does not do well in that department.

It points to two items. First, its president, Mr. Mario

Boccabella, stated in a deposition that "pasteurization"

amounts to "precook[ing] a product," which is "going to

change the texture and the freshness category of that

product tremendously," to the point where "[y]ou're no

longer dealing with a fresh product." Other statements by

Mr. Boccabella, however, make clear that he believed it is

the drying of the pasta that makes it "unfresh." He said,

for example, that "before that drying pasta [sic] took

place, that would be fresh pasta. But once a drying process

takes place, it's becoming brittle, . . . so it's unfresh."

And, we can find nothing in the evidence to which Abruzzi

-5-
5

points that would adequately support a finding that Pasta

and Cheese's "fresh" pasta is dry and brittle.

Second, Abruzzi points to an article in a magazine

that says that a different firm not involved in this case

uses a pasteurization process for its "fresh" pasta, which

process "in actuality, extends product shelf life to 6

months." Even were this article admissible evidence, which

it is not, see Fed. R. Evid. 802; Pallotta v. United States,

404 F.2d 1035, 1036 (1st Cir. 1968) (newspaper article,

being hearsay, "clearly unusable" to prove the facts

asserted therein); Staniewicz v. Beecham, Inc., 687 F.2d

526, 529-30 (1st Cir. 1982) (requiring an exception to the

hearsay rule to be shown before a magazine article

discussing corporate commercial policy could be admitted);

Daniel E. Feld, Annotation, Admissibility of Newspaper

Article as Evidence of the Truth of the Facts Stated

Therein, 55 A.L.R.3d 663 (1974), it is only tangentially

relevant to the consumer deception issue.

Taking all Abruzzi's evidence together, we

conclude that it would not support factfindings that could

bring this case within the scope of ch. 93A's legal term

"unfair or deceptive acts or practices." Nor do we see how,

given this conclusion, a court could find in Abruzzi's favor

-6-
6

on either of two other claims that it made, one under

Massachusetts common law and the other under Massachusetts

antitrust law, Mass. Gen. L. ch. 93. (Indeed, in respect to

this last point, Abruzzi makes no contrary argument.)

For these reasons, the judgment of the district

court is

Affirmed.

-7-
7